JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>             Plaintiff,<br><br>     v.<br><br>NORTHROP GRUMMAN CORPORATION, a Delaware corporation, and NORTHROP GRUMMAN S MSC, a corporation.<br><br>             Defendants. | Case No.: 2:24−cv−01607−MWF −AJR<br><br>**CONSENT DECREE**<br><br>(Federal Water Pollution Control Act, <u>33 U.S.C. §§ 1251</u> to 1387)<br><br>Judge:    Hon. Michael W. Fitzgerald<br>Ctrm:     5A<br><br>Complaint Filed:  February 27, 2024 |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Northrop Grumman Systems Corporation (together with Northrop Grumman Corporation, collectively referred to herein as "Northrop" or "Defendant")[1] owns and operates a facility at and around One Space Park Drive, Redondo Beach, California 90278, under industrial Waste Discharger Identification number 4 19I017862 and construction Waste Discharger Identification number 4 19C384532 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of manufacturing satellites, semiconductors, and various electronic equipment applicable to spacecraft and aircraft operations. The Facility is categorized under Primary Standard Industrial Classification ("SIC") code 3679 (Electrical Components, NEC). The Facility is also identified under Secondary SIC code 3769 (Guided Missile Space Vehicle Parts and Auxiliary Equipment, NEC);

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ

---

[1] Plaintiff filed its Complaint against both Northrop Grumman Corporation and Northrop Grumman S MSC. However, there are no corporate entities registered with the California Secretary of State under the name "Northrop Grumman S MSC." Effective December 31, 2009, Northrop Grumman Space & Mission Systems Corp., an Ohio corporation, merged into Northrop Grumman Systems Corporation.

and 2018-0028-DWQ[2] ("General Permit" or "Permit"), California's NPDES General Permit for Stormwater Discharges Associated with Construction and Land Disturbance Activities No. CAS000002, State Water Resources Control Board Water Quality Order No. 2022-0057-DWQ, as amended by Water Quality Order Nos. 2010-0014-DWQ and 2012-0006-DWQ, and adopted September 8, 2022 ("Construction Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, on December 26, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") addressed to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act, the General Permit, and the Construction Permit;

WHEREAS, on February 27, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-01607-MWF-AJR ("Complaint");

WHEREAS, Plaintiff's Complaint alleged violations of the General Permit, the Construction Permit, and the Clean Water Act, including Defendant's discharges of pollutants into storm drains and surface waters, including Dominguez Channel, the

---

[2] Any reference to the General Permit shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. All references in this instrument to sections or subsections that are changed in a subsequent version of the General Permit shall incorporated such subsequent reference(s) as if set forth herein, e.g., the current §XI.B.6.c and d may be combined into a §XI.B.6.c, or §V may become §IV.

Dominguez Channel Estuary, the Greater Los Angeles/Long Beach Harbor Waters (including Inner and Outer Harbor, Main Channel, Consolidated Slip, Southwest Slip, Fish Harbor, Cabrillo Marina, Inner Cabrillo Beach), connected nearshore and coastal waters, and the Pacific Ocean (collectively, "Receiving Waters");

WHEREAS, Defendant denies Plaintiff's allegations, including as set forth in the Answer it filed on May 1, 2024;

WHEREAS, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree (as defined below) setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      For purposes of this Consent Decree, the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      For purposes of this Consent Decree, LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent

Decree, but only regarding issues raised within the Term (as defined below) of this Consent Decree.

6.    This Consent Decree, and any relief ordered within, applies solely to the Facility's compliance with the General Permit or Construction Permit.

## I.    OBJECTIVES

7.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit and Construction Permit, and compliance with all applicable sections of the CWA.

8.    In light of these objectives and as set forth fully below, Defendant agrees that its overall objective is to comply with the provisions of this Consent Decree, and the terms and conditions of the General Permit and Construction Permit at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

9.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

10.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the forty-five (45)-day review period.

11.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

## B.    DEFINITIONS

12.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA, or in regulations, rules, General Permit or Construction Permit promulgated under the CWA, have the meaning assigned to them in such statutes, regulations, rules, or permits. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

    c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.  "Discharge Point" means each storm water discharge location at the Facility identified in the Facility's SWPPP required to be sampled pursuant to the General Permit.

g.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.  "Feasible" or "to the extent Feasible" means in a manner that reflects best industry practice considering technological availability and economic practicability and achievability.

j.  "Forecasted Rain Event" means a forecasted rain event with a greater than 50% probability above 0.1 inches forecasted at least 24 hours prior to its occurrence as determined by the National Oceanic and Atmospheric Administration for "90245, Manhattan Beach, CA, USA" at https://forecast.weather.gov/MapClick.php?lat=33.9019&lon=-118.3815.

k.  "MIP" means a Monitoring Implementation Plan.

l.  "PPT" means Pollution Prevention Team.

m.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

i.    June 30, 2028;

ii.   seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30, 2028; or

iii.  seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

iv.   Notwithstanding the foregoing, if at least four (4) QSEs were sampled in the 2025-2026 Reporting Year and the sampling results for such samples demonstrate no Exceedances of Table 1 (as defined below) at the Facility during that Reporting Year, then the Termination Date shall be sixty (60) days after such results are provided to Plaintiff, provided there are no pending dispute resolution proceedings initiated under Section IV below and Defendant has completed all payments and affirmative duties required by this Consent Decree. If any dispute resolution proceedings are pending at such time or Defendant has failed to complete all payments and affirmative duties required by the Consent Decree, then the

Termination Date shall be extended through completion of any such proceedings or obligations.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

13.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, constitutes a violation of the Consent Decree unless identified and corrected pursuant to Paragraph 33. Defendant shall maintain records of its monthly visual inspections to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of such records within seven (7) days of the conclusion of each month during the Wet Season.

14.    <u>Prohibition on Exposed Industrial Activity in Areas Designated as Non-Industrial or No-Exposure.</u> Any industrial activity occurring in areas designated as nonindustrial in the Facility's then-effective SWPPP (or SWPPP SiteMap(s)) is a violation of this Consent Decree. Any exposed industrial activity occurring in areas designated as "No Exposure Criteria" or "NEC" in the Facility's then-effective SWPPP (or SWPPP Site Map(s)) is a violation of this Consent Decree. For purposes of this Consent Decree, industrial activity with respect to areas designated as "Non-Industrial" and exposure with respect to areas designated as "No-Exposure" shall be interpreted in a manner consistent with the General Permit.

15.    <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

16.    <u>Rain Gauge/Sensor.</u> Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The

8

rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. Once installed, during the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions. Within seven (7) days of this BMP being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs where such photographs would not implicate security sensitive areas or information, that such BMP has been implemented as set forth above.

**B.  STRUCTURAL AND NON-STRUCTURAL BMPs FOR THE FACILITY.**

17.    <u>Storm Water Filtration</u>.  As soon as possible but no later than thirty (30) days of the Effective Date or by November 22, 2024, whichever is sooner, Northrop shall install one of the following media-filled storm water filter socks at each Discharge Point at the Facility. Northrop shall install either:

  a.    BiocharBAZIC, using storm water treatment media that is a blend of StormwaterBIOCHAR, and StormwaterZEOLITE; https://stormwaterbiochar.com/medias/biocharbazic/;

  or:

  b.    BiocharPEAT, using storm water treatment media that is a blend of StormwaterBIOCHAR, StormwaterPEAT, and StormwaterSHALE; https://stormwaterbiochar.com/medias/biochar-peat/;

  or:

  c.    A storm water filter sock equivalent in treatment media performance and construction to (a) or (b) above.

  d.    Within seven (7) days of the socks being installed, Defendant shall confirm to LA Waterkeeper in writing, with photographs

where such photographs would not implicate security sensitive areas or information, that such socks have been installed as set forth above.

18.    As soon as possible but no later than sixty (60) days of the Effective Date, Northrop shall present to LA Waterkeeper the findings of bench-scale testing of the following stormwater capture and filtration medias first alone, and then in combination, to identify the optimum selection to reduce pollutants in discharges:

     a.     Biochar;

     b.     Granular activated carbon; and

     c.     Zeolite.

19.    As soon as possible but no later than October 1, 2025, Northrop shall obtain and install media-filled storm water filter socks with the best performing medium or combination thereof identified pursuant to Paragraph 18 at each Discharge Point at the Facility. Within seven (7) days of the socks being installed, Defendant shall confirm to LA Waterkeeper in writing, with photographs where such photographs would not implicate security sensitive areas or information, that such socks have been installed as set forth above.

20.    Except as otherwise provided herein, as soon as possible but no later than ten (10) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility in addition to, and consistent with, the procedures described in Exhibit A:

     a.     Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 µm) particles on all accessible paved areas at least once per month outside of the Wet Season, twice per month during the Wet Season, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

10

b.      Northrop shall install media-filled filter socks identified at Paragraph 17 at each discharge site identified at Paragraph 23 and shall use its best efforts to configure such socks to achieve maximum contact time with storm water prior to discharge, consistent with the procedures described in Exhibit A. Defendant shall, thereafter, employ and secure wattles/filters/filtration in the same manner annually prior to the start of the Wet Season, no later than September 15th;

c.      As soon as possible but no later than ten (10) days of the Entry Date and prior to October 1st of each year thereafter, Northrop shall install drain inlet filters with biochar as loose media or filter socks at each drain inlet located within the eastern and southern roadways adjacent to Bldgs M2 and M1; the cooling towers/air chiller units and storm water catch basins at Bldg R7/R7A/TF2; all areas with permanent generators that are not under covered enclosures or do not have secondary containment; southern parking lot at Bldg 121/120/108; the drain inlet at Bldg R6; and all drain inlets that receive runoff from temporary industrial equipment areas without secondary containment as described in Paragraph 21 below and all drain inlets that receive runoff from construction sites as described in Paragraph 22 below.  Installation of drain inlet filters is not required for drain inlets located within the eastern roadway adjacent to Bldgs M2 and M1 that discharge to the existing hydrodynamic separator;

d.      During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the

11

wattles/filters/socks are not sufficiently reducing pollutant concentrations;

e.   Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and wattles deployed at the site;

f.   Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all exposed industrial materials that are not final products (unless such products would mobilize the parameters listed in Table 1 below into storm water discharges), debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

g.   Remove, and minimize to the extent Feasible the outdoor storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire property;

h.   Institute an equipment and vehicle maintenance program that ensures:

    i.   no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.   maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

        iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

    i.    Within seven (7) days of the BMPs in Paragraphs 20.b and 20.g above being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs where such photographs would not implicate security sensitive areas or information, that such BMPs have been implemented as set forth above at areas: SP-150; Bldg 149; SP-M3W; SP-202; SP-CS1; each drain inlet located within the eastern and southern roadways adjacent to Bldgs M2 and M1 that do not discharge to the existing hydrodynamic separator; the cooling towers/air chiller units and storm water catch basins at Bldg R7/R7A/TF2; all areas with permanent generators that are not under covered enclosures or do not have secondary containment; southern parking lot at Bldg 121/120/108; the catch basin at Bldg R6; and all drain inlets that receive runoff from construction sites and from temporary industrial equipment areas without secondary containment.

21.    <u>Temporary Industrial Activities</u>. On a project-by-project basis, Northrop installs, operates, and/or stores equipment and/or materials outdoors, adjacent to existing buildings ("Temporary Industrial Activities"). Equipment associated with Temporary Industrial Activities include, but are not limited to, generators, transformers and other electrical equipment, air conditioners, chillers, and water purification systems. Upon the Effective Date, and for the duration of the applicable Temporary Industrial Activity, Northop shall implement BMPs for each Temporary Industrial Activity, including but not limited to:

a. Implement a sweeping program on all accessible paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

b. To the extent Feasible, install and maintain secondary containment for all temporary generators, cooling towers and compressors;

c. To the extent Feasible, employ drain inlet filters with biochar as loose media or filter socks for all drain inlets that receive runoff from Temporary Industrial Activities as described in Paragraph 20.c above where secondary containment is not provided;

d. During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

e. Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and wattles deployed at the site;

f. Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all exposed industrial materials that are not final products (unless such products would mobilize the parameters listed in Table 1 below into storm water discharges), debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and

14

where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

g. Minimize to the extent Feasible the outdoor storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the area on or around the Temporary Industrial Activity;

h. To the extent Feasible, install and maintain secondary containment for all fuel tanks or chemicals utilized for water treatment or cooling;

i. Maintain a protocol to minimize the potential for discharge or spills during fueling, maintenance, or fuel replacement at generators, including at fuel couplings, hoses, and fueling tanks or vehicles;

j. Conduct fueling, fluid or chemical replacement, or other maintenance activities during dry weather, unless such maintenance is required for safe operation of the Facility,

k. Implement measures and maintain equipment to ensure any discharge or spills of waste fluids to the ground are immediately contained, captured, and cleaned up;

l. Within seven (7) days of the BMPs in Paragraphs 21.c, 21.g, 21.h, and 21.k above being implemented at an existing Temporary Industrial Activity site, or a newly installed Temporary Industrial Activity site, Defendant shall confirm to LA Waterkeeper in writing, with representative photographs where such photographs would not implicate security sensitive areas or information, that such BMP has been implemented as set forth above.

22. <u>Construction BMPs</u>. Northrop conducts construction activities at the Facility ("Construction Activities"). Upon the Effective Date, and for the duration of

the applicable Construction Activity, Northrop shall implement BMPs at any active construction project involving exposed construction materials, including but not limited to staging, equipment storage or placement, construction materials, or waste collection, transport or disposal outdoors, or outdoor construction activities, including but not limited to the measures set out below:

     a.    Implement a sweeping program on all accessible paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

     b.    Provide storm drain inlet protection for any drain inlet receiving construction runoff using either filter socks surrounding the inlets or catch basin inserts. The filter socks shall be equivalent in media, construction, and installation as those specified in Paragraph 17 or as superseded according to Paragraphs 18-19. Catch basin insert media shall be equivalent to the filter sock media.

     c.    Protect soil stockpiles with plastic covers secured with sandbags or equivalent means to prevent wind removal when stockpile additions are complete but not longer than the end of the workday;

     d.    Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of all construction-related BMPs;

     e.    Within twenty-four (24) hours prior to a Forecasted Rain Event, cover using tarps, awnings or other impervious coverings all

construction materials, packaging, debris and waste bins not designed to be outdoors;

f.    Within seven (7) days of the BMP in Paragraph 22.b above being implemented at an existing Construction Activity site, or a newly installed Construction Activity site, Defendant shall confirm to LA Waterkeeper in writing, with photographs where such photographs would not implicate security sensitive areas or information, that such BMP has been implemented as set forth above.

## C.    SAMPLING AT THE FACILITY

23.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from the locations identified in the Facility's then-effective SWPPP, currently including sampling locations SP-M3W, SP-150, SP-CS1, SP-202, and sampling location SP-149 located within the Bldg 149 drainage area identified in Exhibit B. If Defendant demonstrates that industrial activities and materials are not exposed to storm water at Bldg 149 consistent with General Permit § XVII such that a condition of "No Exposure" exists, then sampling from the Bldg 149 drainage area will no longer be required. Defendant shall document the eliminated exposure through photographs. Where such photographs would not implicate security sensitive areas or information, Defendant shall submit such photographs to LA Waterkeeper by email at least thirty (30) days before sampling is discontinued.

24.    In addition, Northrop shall collect representative samples for storm water discharge from each site where Temporary Industrial Activities are exposed to stormwater.

25.    In addition, Northrop shall collect representative samples from each site where Construction Activities are exposed to stormwater.

26.     Northrop shall collect and analyze samples at each location as described in paragraph 23 above during at least four (4) Qualifying Storm Events during the 2024-2025 Wet Season, including, at minimum, two (2) Qualifying Storm Events during the first half of the Reporting Year and two (2) Qualifying Storm Events during the second half of the Reporting Year; provided, however, to the extent that less than two (2) Qualifying Storm Events occur during either half of the Wet Season, Northrop shall collect and analyze such samples during all Qualifying Storm Events during such half of the Wet Season. Defendant will use best efforts to capture the first two Qualifying Storm Events in each half of the Wet Season. Such sampling shall take place as soon as Feasible within the four (4) hour period required by the General Permit § XI.B.5. If Defendant would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge, then Defendant shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Where such photographs would not implicate security sensitive areas or information, Defendant shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) days of a written request for such records by LA Waterkeeper.

27.     <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in <u>40 C.F.R. § 131.38</u> and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and

the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

28.   <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

29.   <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

30.   <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

**D.   REDUCTION OF POLLUTANTS IN DISCHARGES**

31.   <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1**

| Analytes | Value (Industrial) | Values (Construction) | Source of Limit |
|---|---|---|---|
| Copper | .20751 mg/l | N/A | TNAL/TMDL |
| Lead | .12288 mg/l | N/A | TNAL/TMDL |
| Zinc | .89887 mg/l | N/A | TNAL/TMDL |
| TSS | 100 mg/l | N/A | EPA Benchmark |
| Oil and Grease | 15 mg/L | N/A | General Permit NAL |
| pH | 6.0-9.0 | 6.5-8.5 | Benchmark/Construction Permit NAL |
| Aluminum | 1.1 mg/L | N/A | EPA Benchmark |
| Turbidity | N/A | 250 NTU | Construction Permit |

32.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from a given Discharge Point at the Facility exceeds any numeric limit contained in Table 1, Value (Industrial) for stormwater discharged from industrial activities at the Facility, including Temporary Industrial Activities, and Table 1, Value (Construction) for discharges from construction activities.

33.    <u>Action Plan</u>. As of the date that the BMPs have been implemented pursuant to Paragraph 20 above, and for the remainder of the Term, if, during any Wet Season, (a) Defendant has three (3) or more unauthorized non-storm water discharges in violation of Paragraph 13, or (b) storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"); provided, however, an Action Plan shall not be required when the BMPs for (a) the applicable unauthorized non-storm water discharges or (b) Exceedance for the same pollutant in the same drainage area[3] were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge, or QSE sampling that led to the Exceedance. If an Action Plan is simultaneously required for more than one drainage area at the Facility, Defendant may submit one Action Plan that addresses all applicable drainage areas. The complete Action Plan shall be submitted to LA Waterkeeper within ninety (90) days of (a) the applicable unauthorized non-storm water discharge triggering the Action Plan or (b) the receipt of the laboratory report demonstrating the Exceedance, as applicable.

---

[3] For clarity, an Action Plan based on an Exceedance shall be required if: (a) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (b) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

CONSENT DECREE                                        Case No.: 2:24−cv−01607−MWF−AJR

a.  <u>Action Plan Requirements</u>. Each complete Action Plan submitted
shall include at a minimum: (1) the identification of the
pollutant(s) discharged in excess of the numeric limit(s) and/or the
applicable unauthorized non-storm water discharge; (2) an
assessment of the source of each pollutant exceedance and/or
applicable unauthorized non-storm water discharge; (3) the
identification of additional BMPs that designed to achieve
compliance with the numeric limit(s) and/or unauthorized non-
storm water discharge prohibition, as well as the design plans and
calculations of these additional BMPs; and (4) time schedules for
implementation of the proposed BMPs. The time schedule(s) for
implementation shall ensure that all BMPs are implemented as
soon as practical, but in no event later than ninety (90) days
following the submission of the Action Plan, unless a later
implementation date is mutually agreed upon by the Settling
Parties. Within seven (7) days of each of the structural BMPs set
forth in the Action Plan being implemented, Defendant shall
confirm to LA Waterkeeper in writing, with photographs where
such photographs would not implicate security sensitive areas or
information, that such BMP has been implemented as set forth in
the Action Plan.

b.  <u>Action Plan Proposed BMPs.</u> The following BMPs should
generally be considered, where appropriate, for inclusion in
Action Plans to attain the Table 1 levels in the Facility's storm
water discharges:

i.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or
eliminating existing BMPs, taking into account the age of
the BMPs involved or employed, the engineering aspect of

CONSENT DECREE                                                  Case No.: 2:24−cv−01607−MWF −AJR

the application of various BMPs, and any adverse environmental impact of the BMPs.

    ii.    <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

    iii.    <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

    iv.    <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's comments on an Action Plan, Defendant shall consider each of LA Waterkeeper's comments and any recommended revisions and address them or justify in writing why any comment was not addressed. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular

BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.    Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 38.b.i below.

e.    <u>Action Plan Payments</u>. Defendant shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to LA Waterkeeper to cover the cost of review of the Action Plan. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

E.    **VISUAL OBSERVATIONS**

34.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

35.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the

Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

36.    Visual Observations Records. Defendant shall maintain observation records, including any photographs, to document compliance with Paragraphs 34 and 35. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; and (iii) photographs of the foregoing, if any.  Defendant shall provide LA Waterkeeper with a copy of those records, including photographs where such photographs would not implicate security sensitive areas or information, within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

37.    Employee Training Program. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.    Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference

and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. <u>Visual Observation Training</u>. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.  <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

38.  <u>SWPPP Revisions</u>.

a.  <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree, including Exhibit A, and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within sixty (60) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.   An updated pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.  A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.    A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.    A MIP as required by sections XI and X.I of the General Permit;

vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.    A Training Program as described above in Paragraph 36.

b.    <u>Additional SWPPP Revisions</u>.

i.    Within sixty (60) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.    Within sixty (60) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP

to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.  Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 38.a and 38.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either address them or justify in writing why a comment was not addressed or a change was not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**F.  COMPLIANCE MONITORING AND REPORTING**

39.  Site Inspection. LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of assessing compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at

least seventy-two (72) hours' notice prior to a Site Inspection intended to occur in dry weather and forty-eight (48) hours' notice prior to a Site Inspection intended to occur in wet weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 68. During a Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs during any Site Inspection subject to review and approval of any such photographs by Defendant.

40.    <u>Document Provision</u>. Within seven (7) days of any additional structural BMPs implementation during the Term, Defendant shall confirm to LA Waterkeeper in writing, with photographs where such photographs would not implicate security sensitive areas or information, that such BMP has been implemented and is operational as set forth above. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall provide a copy to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 68, of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality, except automated or non-

substantive replies and confirmations and provided that notice to
LA Waterkeeper within seven (7) days of filing in SMARTS shall
be deemed acceptable in lieu of other electronic copying;

b.  Within seven (7) days of receipt by Defendant, send to LA
Waterkeeper, by electronic mail to the individual(s) designated
below at Paragraph 68, any compliance document, inspection
report, written communication and/or correspondence (except
automated or non-substantive replies and confirmations), or any
document related to storm water quality at the Facility received by
Defendant from the Regional Board, the State Board, and/or any
state or local agency, county, municipality.

41.  <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs
associated with Plaintiff's monitoring of Defendant's compliance with this Consent
Decree during the Term by paying Thirty Thousand Dollars ($30,000.00) within sixty
(60) days of the Entry Date.  Payments pursuant to this Paragraph shall be made via
check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt
requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite
250, Los Angeles, CA 90012. Failure to submit payment as required under this
Paragraph will constitute breach of the Consent Decree.

**G.  ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

42.  <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial
project activities that will reduce or mitigate the impacts of storm water pollution
from industrial activities occurring in waters tributary to the Los Angeles/Long Beach
Harbor Waters. Defendant shall make a payment totaling Two Hundred Thousand
Dollars ($200,000.00) to the Rose Foundation made within sixty (60) days of the
Entry Date, payable to the Rose Foundation for Communities and the Environment
and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland,

CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

43. <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of One Hundred and Seventy-Seven Thousand One Hundred and Forty-Seven Dollars ($177,147.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within sixty (60) days of the Entry Date. The payment shall be made payable to: Sycamore Law Inc., Attorney Client Trust Account and delivered by overnight carrier to 1004 O'Reilly Avenue, San Francisco, CA 94129. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

44. <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 41. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

45. <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 5% per year (0.4165% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current

on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 41. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

46.     This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

47.     Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

48.     Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 46, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

49.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §

1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

50.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised related to the Facility in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

51.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

52.    The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Except as otherwise provided by this Consent Decree, the Parties hereby waive and relinquish any rights or benefits they may have under <u>California Civil Code section 1542</u> with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and/or Complaint

for alleged Clean Water Act, General Permit, and Construction Permit violations up to and including the Termination Date of this Consent Decree.

53.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

54.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

55.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

56.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

57.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and

paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

58.     <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

59.     <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

60.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

61.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

62.     <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

63.     <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

64.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

65.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any

deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

66.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

67.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

68.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent Feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not Feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Barak Kamelgard
Benjamin Harris
Erina Kwon
Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: barak@lawaterkeeper.org
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Sycamore Law, Inc.
Daniel Cooper
1004 O'Reilly Avenue, Ste. 100
San Francisco, CA 94129
Email: daniel@sycamore.law
(415) 360-2962

If to Defendant:
Northrop Grumman
Erica Lai
Fern Fleischer-Daves
2980 Fairview Park Drive
Falls Church, VA 22042
Email: erica.lai@ngc.com
Email: fern.fleischer-daves@ngc.com
Phone: (703) 280-2900

With copies to:
Morgan, Lewis & Bockius LLP
Rick Rothman
300 South Grand Avenue, Twenty
Second Floor
Los Angeles CA, 90071-3132
Email: rick.rothman@morganlewis.com
(213) 680-6590

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

69.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as

inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____November 21_____, 2024        By: _____
                                               Bruce Reznik
                                               Executive Director
                                               Los Angeles Waterkeeper

Dated: _____November 22_____, 2024        By: _____
                                               Daniel K. White
                                               Mission Assurance Director
                                               Northrop Grumman Systems
                                               Corporation

APPROVED AS TO FORM

Dated: _____November 21_____, 2024        By: _____
                                               Daniel Cooper
                                               Partner
                                               SYCAMORE LAW, INC.
                                               Attorney for Plaintiff
                                               Los Angeles Waterkeeper

Dated:    November 25    , 2024          By: _____

                                        J. Raymond Rothman
                                        Morgan, Lewis & Bockius LLP
                                        Attorney for Defendant

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

        Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated:    January 9, 2025    _____          CENTRAL DISTRICT OF CALIFORNIA

                                        _____

                                        MICHAEL W. FITZGERALD
                                        United States District Judge

EXHIBIT A

## Procedure to Deploy Biochar Filter Socks

1. Northrop Grumman (NG) stormwater pollution prevention plan (SWPPP) team members and GSI Environmental (GSI) will monitor weather forecasts.
2. If a rain event is forecasted, NG and GSI will coordinate best management practice (BMP) deployments and potential sampling, including the mobilization of personnel outside of normal working hours (e.g., weekends and holidays).
3. GSI will provide hands-on field training at the start of each wet season.
4. Sweeping will be conducted prior to the deployment of filter socks to ensure the areas are clean for deployment.
5. Multiple layers of filtration socks with biochar media (biochar proven most effective based on most recent bench-scale testing) will be deployed upstream of industrial stormwater discharge points identified in the SWPPP prior to forecasted storm events with a greater than 50% chance of precipitation over 0.1 inches. The multiple layers will be specified in NG's SWPPP.
6. Filter socks will be deployed and stabilized to prevent gaps from forming underneath, using tools (e.g., zip ties) throughout the entire duration of the rain event. Except for Bldg 202, safety cones will be installed around the filter socks to prevent potential damage from equipment or vehicle traffic.
7. Filter socks will be retrieved after the rain event has ceased and dried. Where necessary, additional cleaning of the filter socks may be performed, and the cleaning water will be collected for proper disposal. Retrieving the filter socks is prudent to prevent degradation from sun and UV exposure, damage from equipment or vehicles, and to avoid attracting rodents, which could further damage the filter socks and reduce their lifespan.
8. After retrieval of the filter socks, comprehensive sweeping will be performed to ensure the areas are clean and free of surface debris.
9. New filter socks will be procured and deployed to replace old or damaged filter socks as necessary, based on observations made by NG after each rain event.
10. Specific deployment protocols for each monitored outfall will be specified in NG's SWPPP.

# EXHIBIT B

